UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELLEY M. PATTON,

                              Plaintiff,

                                                          **Hon. Hugh B. Scott**

                                                          **14CV308A**

              v.
                                                          **Report**
                                                          **&**
                                                          **Recommendation**

FORD MOTOR COMPANY,

                              Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 8). The instant matter before the Court is a motion of defendant (Docket No. 33[1])

for summary judgment. Responses initially were due by November 17, 2015, with replies due by

December 1, 2015 (Docket No. 35), but plaintiff moved for extension of time to respond (Docket

No. 36), which was granted. Responses then were due by December 15, 2015, with replies due

by December 29, 2015 (Docket No. 37). Defendant then moved for extension of its time to reply

(Docket No. 38), which was granted; replies were due by January 11, 2016 (Docket No. 39).

Plaintiff filed her response (Docket No. 40[2]).

---

[1] In support of its motion, defendant submits its Statement of Undisputed Facts; its
Memorandum of Law; defense counsel's Declaration; and an appendix of exhibits, including
declarations from Melinda Brayo, David Kamienecki, Eric James, Donald Paranick, and excerpts
from deposition transcripts, and a no probable cause determination of October 23, 2014, Docket
No. 33; Def. Reply Brief, with exhibits attached, Docket No. 41.

[2] Included in this response is plaintiff's Memorandum of Law; her Response to

## BACKGROUND

This is a Fair Labor Standards Act, 29 U.S.C. §§ 207, et seq. (or "FLSA"), action for discrimination on the basis of pay (Docket No. 1, Compl.) for failure to pay plaintiff overtime pay (see Docket No. 40, Pl. Memo. at 12-15). The first cause of action alleges that defendant failed to pay overtime wages to plaintiff, in violation of 29 U.S.C. § 207, claiming that she had non-exempt job duties (Docket No. 1, Compl. ¶¶ 86-89, 87), while the second cause of action alleges violation of (unspecified provision of) New York Labor Law and the FLSA, 29 U.S.C. § 201, for failure to pay overtime wages (id. ¶¶ 91-94). Plaintiff also alleges claims of retaliation in violation of New York Labor Law § 215; pay discrimination, in violation of 42 U.S.C. § 1981; and failure to promote, in violation of § 1981 (id. ¶¶ 95-96, 97-100, 101-05). Defendant answered (Docket No. 5).

*Overtime Pay Claims (First and Second Causes of Action)*

According to defendant's Statement (Docket No. 33, cf. Docket No. 40, Pl. Response to Def. Statement[3]), plaintiff is African American and was employed at defendant's Buffalo Stamping Plant since August 1999 (Docket No. 33, Def. Statement ¶¶ 1-2). On or about July 17, 1999, defendant offered plaintiff a salary grade 05 financial analyst position in the stamping plant's controller's office, at an annual salary of $44,100 (or $848 per week) (id. ¶ 5). Plaintiff received two salary grade elevations to salary grade 07 in 2002 (id. ¶ 6). In 2003, the management of the controller's office placed plaintiff on a performance improvement plan (id.

_____

Defendant's Statement of Undisputed Facts; and plaintiff's exhibits (including plaintiff's deposition testimony, the transcript of the deposition of Anade Long, and correspondence and personnel file), id.

[3]Facts are taken from defendant's Statement, save where indicated below when plaintiff disputes them.

¶ 7); plaintiff disputes whether she had any performance deficiencies before or following the performance improvement plan (Docket No. 40, Pl. Response to Def. Statement ¶ 7).  In 2005-06, the controller's office slated plaintiff for discharge in a workforce reduction (Docket No. 33, Def. Statement ¶ 8).  Defendant claims that while the controller's office had reductions, its human resource organization at each plant added a new position (id. ¶ 9), but plaintiff denies knowledge as to this (Docket No. 40, Pl. Response to Def. Statement ¶ 9).  Human resource manager at the Buffalo Stamping Plant, Eric James, met with plaintiff because her position interfaced with his.  Upon learning of her impending release, James offered plaintiff a job as the single point of contact (or "SPOC") person (Docket No. 33, Def. Statement ¶ 10; cf. Docket No. 40, Pl. Response to Def. Statement ¶ 10).  Later, defendant eliminated the SPOC position, and plaintiff moved to an open human resources associate position, also salary grade 07 (Docket No. 33, Def. Statement ¶ 11).

Defendant contends that the primary duty of this human resources position was manpower planning but Plaintiff disputes the primary duty of this position (Docket No. 40, Pl. Response to Def. Statement ¶ 11; Docket No. 40, Ex. 1, Pl. EBT Tr. at 101, 102, 103; Docket No. 33, Def. Ex. 3, Exhibit to Pl. EBT Bates No. 000748-49).  Defendant claims that the human resources associate responsible for manpower planning managed and directed the assignment of hourly employees (Docket No. 33, Def. Statement ¶ 12); but plaintiff denies that she managed or directed any employees, lacking discretion to manage or direct (Docket No. 40, Pl. Response to Def. Statement ¶ 12).  Instead, she was guided by national and local collective bargaining agreements and production needs (id.) and denied that her primary duty was manpower planning (id. ¶ 15).  The manpower planning function assigned to plaintiff consisted of office or non-

manual work, with plaintiff efficiently assigning and placing all hourly employees on all shifts at the plant (Docket No. 33, Def. Statement ¶ 13; see Docket No. 40, Pl. Response to Def. Statement ¶ 13). Plaintiff denies knowledge regarding whether these duties were central to the operations of the Buffalo Stamping Plant or whether inefficient manpower planning and placement would negatively impact defendant's internal operations (Docket No. 40, Pl. Response to Def. Statement ¶ 13). She also denies that the manpower planning function required her to exercise discretion (id. ¶ 14). In 2008, due to retirement and workforce reduction, plaintiff performed clerical tasks as part of her duties (Docket No. 33, Def. Statement ¶¶ 17, 20), although plaintiff disputes the particulars of the reassignment of functions within the reduced staff (see Docket No. 40, Pl. Response to Def. Statement ¶ 20).

In 2008, plaintiff was disciplined for releasing confidential information (Docket No. 33, Def. Statement ¶¶ 18, 21), a charge plaintiff vehemently denied (Docket No. 40, Pl. Response to Def. Statement ¶¶ 18, 21). Plaintiff's appeal was unsuccessful and she was barred for two years from any promotions or transfers (Docket No. 33, Def. Statement ¶ 21, Docket No. 40, Pl. Response to Def. Statement ¶ 21), depriving her an opportunity in 2009 to transfer to the Dearborn Engine plant (Docket No. 33, Def. Statement ¶ 22).

Defendant first argues that plaintiff did not provide admissible evidence to support her claims and instead made conclusory allegations (Docket No. 33, Def. Memo. at 3-4; see Docket No. 41, Def. Reply Br. at 1-2).

As for plaintiff's overtime claim, she contends that she complained that she had to work uncompensated overtime in January 2011, noting that David Kamienecki (then labor relations supervisor at the Buffalo Stamping Plant who supervised plaintiff from 2009 to 2012 (Docket

No. 33, Def. Statement ¶ 29; see Docket No. 33, Ex. 2, Decl. of David Kamienecki ¶ 3)) referred

to plaintiff as "hourly personnel" (Docket No. 40, Pl. Response to Def. Statement ¶ 25).  She

contends that defendant incorrectly classified employees as exempt or non-exempt (id. ¶ 26).

Defendant argues that plaintiff is exempt from overtime requirements under state and

federal labor law (Docket No. 33, Def. Memo. at 4-8), while plaintiff disputes this.  According to

defendant, plaintiff was paid $800 per week and her primary duty was managing the manpower

planning process (id. at 6-7; Docket No. 33, Def. Statement ¶¶ 12-13).  The parties also dispute

whether plaintiff's primary duty involved manpower planning and the degree of discretion

manpower planning has at the Buffalo Stamping Plant.  Plaintiff argues that her primary duty

(that is, the duty requiring 50% or more of her time) did not involve manpower planning (Docket

No. 40, Pl. Memo. at 6-8).

Defendant contends that the third prong for the administrative exemption applies here

because plaintiff exercised discretion and independent judgment (Docket No. 33, Def. Memo. at

7).

*Retaliation Claim (Third Cause of Action)*

Plaintiff also argues that she alleged a prima facie case of retaliation in violation of New

York Labor Law § 215 (Docket No. 40, Pl. Memo. at 15-17), which defendant denies (Docket

No. 33, Def. Memo. at 8-9).  She alleged that she continually complained that defendant's pay

practices violated state and federal labor law (Docket No. 1, Compl. ¶ 96) and plaintiff suffered

adverse employment actions as a result of her complaints, by being erroneously classified,

denying her an assessment, denying her an evaluation, and denying her promotion opportunities

(Docket No. 40, Pl. Memo. at 15-16; Docket No. 40, Pl. Response to Def. Statement ¶¶ 29, 30;

Docket No. 33, Ex. 1, Pl. EBT Tr. at 434-35).  Plaintiff's duties (including non-exempt tasks) were continued despite her complaints (see Docket No. 33, Ex. 1, Pl. EBT Tr. at 435).  She contends that her 2008 discipline (which should have lasted only two years) continued beyond into 2012 and 2013 (Docket No. 40, Pl. Memo. at 16; Docket No. 40, Pl. Response to Def. Statement ¶ 21).

In 2012, plaintiff complained to then supervisor Melinda Brayo and Brayo then issued a negative performance review for plaintiff performing duties in two different job classifications (Docket No. 40, Pl. Memo. at 16).  In the next year, Brayo issued another negative performance review, finding plaintiff was "ineffective" under the One Ford Behaviors criteria "Own Working Together" (id. at 16; Docket No. 40, Pl. Response to Def. Statement ¶ 32).  Finally, she argues that she established a nexus between her overtime pay complaints and the adverse actions against her (Docket No. 40, Pl. Memo. at 17).

*Failure to Pay and Failure to Promote Claims (Fourth and Fifth Causes of Action)*

Plaintiff also claims that she was discriminated against on the basis of pay in violation of 42 U.S.C. § 1981, because she was paid less than Caucasian employees (Docket No. 40, Pl. Memo. at 17-19), as well as a failure to promote due to her race (id. at 19-26).  Defendant argues that these claims are time barred (Docket No. 33, Def. Memo. at 9-10) and plaintiff fails to establish a prima facie case for these claims (id. at 10-12, 12-13, 13-14).

In reply, defendant asserts that plaintiff's numerous conclusory denials without supporting evidence should be disregarded (Docket No. 41, Def. Reply Br. at 2).  Plaintiff has not shown what her "primary duty" as a human resources associate was, with defendant arguing that the definition of "primary duty" is dictated by the principal importance to the employer

rather than totaling the hours expended in various tasks (id. at 3), see Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 541 (7th Cir. 1999); 29 C.F.R. § 541.700(a).  "While Plaintiff argues manpower planning is not her 'primary duty,' she never says what her primary duty is," without qualifying how much time she expended on manpower planning or other tasks (id. at 3). Defendant claims that her manpower planning role was "the duty of principal importance to her employer" (id., emphasis in original).  Plaintiff's other duties were exempt, she was relatively free from direct supervision, and had her job been limited to non-exempt duties, she would have been at two pay grades lower than her grade 07 (id. at 4).  As for discretion, defendant replies that plaintiff was tasked with training coworkers in procedures surrounding manpower planning; that she used a complex internal system to resolve conflicts in manpower planning (id. at 5), with plaintiff becoming the subject expert on these procedures (as a system plaintiff testified was unteachable and unknowable, see Docket No. 41, Def. Ex. 9, Pl. EBT Tr. at 310; Docket No. 41, Def. Reply Br. at 5).  Plaintiff uses as an example of the lack of discretion the fact that she was being admonished not to advise an employee of retirement benefits (Docket No. 40, Pl. Memo. at 9-10); defendant responds that plaintiff was asked by an employee how to prevent the employee's ex-spouse from obtaining his benefits, where plaintiff's advice ventured into practicing law without a license (Docket No. 41, Def. Reply Br. at 6).  Defendant points out examples of her exercising discretion, such as having her expertise in supplemental unemployment benefits under the national collective bargaining agreement that led to a company policy change and her interpretation of that agreement (as well as local agreements) (id.). Defendant concludes that since plaintiff exercised discretion in her primary manpower planning duties and in other duties plaintiff was exempt under federal and state law from overtime (id. at

7).  Defendant also notes that plaintiff fails to show evidence that she worked more than forty

hours to claim overtime at all (id. at 7 n.3).

As for the retaliation claim, defendant replies that plaintiff has not shown any adverse

action occurring to her for raising the overtime issue (id. at 7-8).  "Nothing changed after

Plaintiff raised the overtime issue:  her classification and pay remained the same, the HR

assessment requirement stayed as it had been, and her rating on 'own working together'

remained 'ineffective'" (id. at 8, again emphasis in original).  As for the pay discrimination and

failure to promote claims, defendant reiterates its contentions that plaintiff fails to present proof

of similarly situated employees who were paid more than she was or that she qualified for

promotions she claims she did not obtain (id. at 8-10).

### DISCUSSION

I.      Applicable Standards

A.      Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective

Dec. 2010).  The party seeking summary judgment has the burden to demonstrate that no

genuine issue of material fact exists.  In determining whether a genuine issue of material fact

exists, a court must examine the evidence in the light most favorable to, and draw all inferences

in favor of, the non-movant. Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is

genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'"  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).

While the moving party must demonstrate the absence of any genuine factual dispute, Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought,

however, "must do more than simply show that there is some metaphysical doubt as to the

material facts. . . . [T]he nonmoving party must come forward with specific facts showing that

there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc.,

283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir.

2002).  The opponent to summary judgment may argue that he cannot respond to the motion

where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to

justify its opposition," Fed. R. Civ. P. 56(d).

      The Local Civil Rules of this Court require that movant and opponent each submit "a

separate, short, and concise" statement of material facts, and if movant fails to submit such a

statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2)

(effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, id.

R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is

contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph

in the movant's statement will be deemed admitted unless specifically controverted by a

correspondingly numbered paragraph in the opponent's statement, id.  Each statement of material

fact is to contain citations to admissible evidence to support the factual statements and all cited

authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

B.     Administrative Exemption to Fair Labor Standards Act

Since the FLSA is a remedial statute, the exemptions from the FLSA are to be narrowly

construed, Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (quoting

Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991)) (see Docket No. 40, Pl. Memo.

at 7).

> "'The exemption question' under the FLSA 'is a mixed question of law and fact.'
> Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010).  'The question of how
> the [employees] spent their working time . . . is a question of fact.  The question
> whether their particular activities excluded them from the overtime benefits of the
> FLSA is a question of law,'"

Ramos, supra, 687 F.3d at 558 (quoting Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714

(1986)); see Holzapfel v. Town of Newburgh, 145 F.3d 516, 521 (2d Cir. 1998).  "In general,

however, how an employee spends her time working is a question of fact for a jury," Anderson v.

Dolgencorp of N.Y., Inc., Nos. 09cv360, 09cv363, 2011 U.S. Dist. LEXIS 49658, at *26

(N.D.N.Y. May 9, 2011) (citing Icicle Seafoods, supra, 475 U.S. at 714).  Even after full

discovery, courts are reluctant to grant summary judgment based on a FLSA exemption due to

the fact-intensive nature of the FLSA exemption analysis, Cheng Chung Liang v. J.C. Broadway

Rest., Inc., No. 12-CV-1054 (TPG), 2015 U.S. Dist. LEXIS 122878, at *4 (S.D.N.Y. Sept. 15,

2015); Sexton v. American Golf Corp., No. 13-CV-873 (RJD) (SMG), 2015 U.S. Dist. LEXIS

137733, at *7 (E.D.N.Y. Oct. 8, 2015).

"The employer bears the burden of establishing that the employee falls within the

exemption," Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Cheng Chung

Liang, supra, 2015 U.S. Dist. LEXIS 122878, at *4.  The employer must show that the employee

satisfies the salary and duty requirements, 29 C.F.R. § 541.2, and "provide evidence as to the

10

nature and degree of the plaintiff's employment," <u>Moran v. GTL Constr., LLC</u>, No. 06 Civ. 168,

2007 U.S. Dist. LEXIS 55098, at *6 (S.D.N.Y. July 24, 2007).  "Additionally, both a

determination of the employee's 'primary duty' and whether the employee exercised 'discretion

and independent judgment' must be based on an examination of the totality of the facts involved

in the employment situation," <u>id.</u> (citing 29 C.F.R. §§ 541.202(b), 541.700(a)).

At issue here is whether plaintiff is an exempt employee for Fair Labor Standards Act or

New York Labor Law purposes, <u>see</u>, <u>e.g.</u>, <u>Reiseck v. Universal Commc'ns of Miami, Inc.</u>,

591 F.3d 101, 105 (2d Cir. 2010) (same standards apply under FLSA and New York Labor Law

for exemptions).  To be exempt under either labor law regime, three criteria need to be satisfied:

the employees has to earn at least $455 per week; the employee's "primary duty" is the

"performance of office or non-manual work directly related to the management or general

business operations of the employer"; and the employee's primary duty "includes the exercise of

discretion and independent judgment with respect to matters of significance," 29 C.F.R.

§ 541.200(a) (Docket No. 33, Def. Memo. at 4).

C.     Retaliation under New York Labor Law § 215

New York Labor Law § 215 states that "no employer or his or her agent, or the officer or

agent of any corporation . . . shall discharge,  . . . , penalize, or in any other manner discriminate

or retaliate against any employee (i) because such employee has made a complaint to his or her

employer," N.Y. Lab. Law § 215(1)(a).  To state a retaliation claim under Labor Law § 215, a

plaintiff must introduce evidence that "while employed by the defendant, he or she made a

complaint about the employer's violation of New York Labor Law and was terminated or

otherwise penalized or discriminated against, or subject to an adverse employment action as a

result," Esmilla v. Cosmopolitan Club, 936 F. Supp. 2d 229, 238-39 (S.D.N.Y. 2013) (Docket

No. 33, Def. Memo. at 8); see also Seever v. Carrols Corp., 528 F. Supp. 2d 159, 166 (W.D.N.Y.

2007) (Larimer, J.) (dismissing claim where plaintiff failed to allege that she informed supervisor

of employer's pay practices violates New York Labor Law) (Docket No. 1, Compl. ¶ 95; Docket

No. 40, Pl. Memo. at 15).  There must be a "nexus between the employee's complaint and the

employer's retaliatory action" Esmilla, supra, 936 F. Supp. 2d at 239 (Docket No. 33, Def.

Memo. at 8).

       D.     Prima Facie Case of Discrimination

     Plaintiff alleges discrimination in pay and in failure to promote in violation of 42 U.S.C.

§ 1981 (Docket No. 1, Compl., Fourth and Fifth Causes of Action).  For a non-hostile

environment claims under § 1981, the Second Circuit applies the same standards as Title VII

claims, Patterson v. County of Oneida, 375 F. 3d 206, 225 (2d Cir. 2004) (Docket No. 33, Def.

Memo. at 10), which in turn is governed by the McDonnell Douglas v. Green, 411 U.S. 792,

802-04 (1973), and its burden shifting (id.).  Plaintiff first needs to show that she is a member of

a protected class; that she qualified for her position; she suffered an adverse employment action;

and the action occurred under circumstances giving rise to an inference of discrimination, Mario

v. P & C Food Mkts., Inc., 313 F.3d 758, 767 (2d Cir. 2002) (id. at 11).  For a pay discrimination

claim, the action would be that plaintiff was paid less than similarly situated non-members of the

protected class, Cruse v. G & J USA Pub., 96 F. Supp. 2d 320, 326 (S.D.N.Y. 2000) (Docket

No. 40, Pl. Memo. at 17; see Docket No. 33, Def. Memo. at 12).  For a failure to promote claim,

the adverse action is rejection from a job plaintiff applied for and was rejected, see Boggs v. Die

Fliedermaus, LLP, 286 F. Supp. 2d 291, 300 (S.D.N.Y. 2003) (Docket No. 40, Pl. Memo. at 19;

see Docket No. 33, Def. Memo. at 13).

　　　If plaintiff meets her burden for either claim, the burden shifts to defendant to identify

"'some legitimate, non-discriminatory reason'" for its action, Gorzynski v. Jet-Blue Airways

Corp., 596 F.3d 93, 106 (2d Cir. 2010) (quoting McDonnell Douglas, supra, 411 U.S. at 802)

(Docket No. 33, Def. Memo. at 11).   Once defendant shows a non-discriminatory reason for the

actions, the burden shifts back to plaintiff to show that the proffered reasons were pretext (id.),

see, e.g., Gorzynski, supra, 596 F.3d at 1060.

　　　These claims under § 1981 have a four-year statute of limitations, 28 U.S.C. § 1658; see

also Banks-Holliday v. American Axle & Mfg., Inc., No. 02cv245, 2005 WL 189724, at *1

(W.D.N.Y. Jan. 24, 2005) (Skretny, J.) (id. at 9).

II.　　　Overtime and Administratively Exempt Employee

　　　A key issue present in this motion is whether plaintiff has sufficient discretion and

independent judgment in performing her duties as a human resources associate to be exempt

from the FLSA or the Labor Law.   Defendant argues that plaintiff's position is exempt, for

example as a personnel or human resources position (Docket No. 33, Def. Memo. at 4-5, see

29 C.F.R. § 541.201(b)).   Plaintiff earned more than $455 per week.   So to be exempt, plaintiff's

position has to be office or non-manual work related to management of the employer and involve

the exercise of discretion and independent judgment, see 20 C.F.R. § 541.200(a).

　　　Plaintiff counters that the job description provided by defendant only enumerate the tasks

for manpower planning and there is no evidence that plaintiff's primary duty was manpower

planning (Docket No. 40, Pl. Memo. at 6).  But plaintiff does not state what her primary duty was.

This leads to the question whether plaintiff primary duty was manpower planning. Plaintiff almost claims that she did not perform manpower planning duties, but this is belied by her own testimony (Docket No. 33, Def. Ex. 1, Pl. EBT Tr. at 67-68, 100-02) arguing that her duties were similar to non-exempt employees.  At her deposition, plaintiff was asked how an attachment to an email (listing in her employee assessment various "Labor Relations" and "HRBO/Salaried Personnel" tasks) related to her overtime claim (Docket No. 40, Ex. 1, Pl. EBT Tr. at 101-02; Docket No. 33, Ex. 3, EBT Exhibits, Bates Nos. 000748-49).  She explained that she performed certain tasks that she claimed were non-exempt (Docket No. 40, Ex. 1, Pl. EBT Tr. at 102-03).  She also testified that she compared her duties with that of a non-exempt logistics planner, comparing her manpower planning duties (which she called "one of the major parts of [her] job") with that of the non-exempt logistics planner (Docket No. 33, Ex. 3, Pl. EBT Tr. at 67-68; Docket No. 33, Def. Statement ¶ 12).

As one district court in this Circuit found "job-related activities of the employees—their primary duties—become material facts," Ahern v. State of N.Y., 807 F. Supp. 919, 923 (N.D.N.Y. 1992), aff'd sub nom. Reich v. State of N.Y., 3 F.3d 581 (2d Cir. 1993).  Courts in other Circuits have held that the determination of what is an employee's primary duty is a question of fact, Maestas v. Day & Zimmerman, LLC, 664 F.3d 822, 827-28 (10th Cir. 2012) (citing other Tenth Circuit and Fourth Circuit cases); see Icicle Seafoods, supra, 475 U.S. at 713-14 (holding Ninth Circuit made improper fact-finding by answering the "dominant employment" question).

Disputed here is what was plaintiff's primary duty.  Plaintiff claims that manpower planning is merely part of her duties (see Docket No. 40, Pl. Memo. at 10-11), interspersed with non-exempt duties.  In her deposition, plaintiff testified that, listing her duties for overtime analysis "one of the major parts of my job is to plan manpower for the hourly employees" (Docket No. 33, Def. Appx. Ex. 3, Pl. EBT Tr. at 67).  Plaintiff responds that while a "major part" of her job, manpower planning was not the "primary duty" (Docket No. 40, Pl. Memo. at 8).  Plaintiff, however, does not enumerate her time at the various duties to determine which one predominates.

But the burden was on defendant as employer to show that plaintiff was exempt, Corning Glass Works, supra, 417 U.S. at 196-97.  Defendant, on the other hand, contends that plaintiff's "primary duty" was manpower planning (Docket No. 33, Def. Memo. at 7; see Docket No. 33, Def. Statement ¶ 12).  Defendant produced the statement of plaintiff's initial supervisor, David Kaminecki, that plaintiff's "main duty throughout [his] tenure at the Buffalo Stamping Plant was manpower planning, i.e., managing and directing the assignment of hourly employees to shifts and departments based on collective bargaining agreement terms and according to fluctuating production needs" (Docket No. 33, Ex. 2, Kaminecki Dep. ¶ 4; see Docket No. 33, Def. Statement ¶ 12).  Plaintiff's subsequent supervisor, Melinda Brayo, claimed that she supervised plaintiff in performance of her "primary duty—the manpower planning function" (id., Ex. 1, Brayo Decl. ¶ 3 see also id., Ex. 5, Donald Paranick Decl. ¶ 3 (supervised plaintiff indirectly and her "main responsibility" was manpower planning); id., Ex. 6, Scott Jones EBT Tr. at 89 (one of plaintiff's "sole responsibility" was for manpower planning, hence deeming her an exempt employee); id., Ex. 3, EBT Exhibits, Bates Nos. 000733-36 (plaintiff's employee profile)).

15

Plaintiff did not submit a sworn declaration or affidavit in opposition to this motion, but in responding to defendant's Statement cites to her deposition testimony contradicting defendant's contentions about her primary duties (Docket No. 40, Pl. Response to Def. Statement ¶ 12).  Plaintiff cites to her employee profile which lists five "key accomplishments" she performed while a HR Associate—Generalist:  "weekly manpower planning/workforce changes"; "company-wide job postings/transfers"; "SME/plaint liaison for CTO" (Central Timekeeping Office); "enterprise-wide buyout special programs"; "SME for staff SUB Finance 6 Sigma project" (Docket No. 33, Ex. 3, EBT Tr. Ex., Bates No. P000733).

What is not clear from this record is what plaintiff's "primary duty" was.  The listing of plaintiff's five "key accomplishments" is not of a listing of her duties, the amount of time she spent performing each task, or the priority defendant (or even plaintiff) gave to each task such as to identify what her "primary duty" was.

Even if plaintiff's conclusory denials are disregarded (cf. Docket No. 41, Def. Reply Brief at 2, 3), this inquiry of what plaintiff's primary duty was is fact intensive and cannot be determined as a matter of law.  Whether plaintiff's primary duty was manpower planning is a question of how she spent her days, a question of fact, Icicle Seafoods, supra, 475 U.S. at 714; Ramos, supra, 687 F.3d at 558.  Given this material factual issue, summary judgment to defendant **is not appropriate** and defendant's motion (Docket No. 33) dismissing these claims **should be denied**.

Plaintiff also argues that her tasks in manpower planning was merely scheduling, which she characterizes as "rote tasks" (Docket No. 40, Pl. Memo. at 8), hence without sufficient discretion and judgment to make her position exempt.  Plaintiff, in responding to this motion,

denies that she managed or directed the assignment of hourly employees or possessed the authority or discretion to manage and direct (Docket No. 40, Pl. Response to Def. Statement ¶ 12).  As for her argument that she lacked discretion because she could not advise an employee on his retirement benefits, this bar does not address whether or not she has discretion.  The area inquired (beneficiaries for retirement purposes) was outside the scope of her duties.  The fact that she was admonished in this area does not address whether she exercised discretion in other functions with defendant.

Again, the degree of discretion and judgment in what plaintiff performed in manpower planning is also fact intensive and cannot be resolved in a motion for summary judgment.

Given the fact intensive inquiries of what was plaintiff's primary duty and the degree of discretion she had in exercising that duty, summary judgment to defendant on plaintiff's First and Second Causes of Action **is not warranted**, see Callari v. Blackman Plumbing Supply Inc., 988 F. Supp. 2d 261, 283 (E.D.N.Y. 2013); defendant's motion for summary judgment (Docket No. 33) should be **denied**.

III.    Retaliation Claim under New York Labor Law

Defendant next argues that plaintiff fails to assert a retaliation claim under New York Labor Law § 215 (Docket No. 33, Def. Memo. at 8-9).  Defendant contends plaintiff has not alleged an adverse job action to her from her complaints or any such action occurring within the two year statute of limitations, see Reilly v. Natwest Markets Group, Inc., 178 F. Supp. 2d 420, 427 (S.D.N.Y. 2002) (id. at 8); see also id. (court denied Labor Law § 215 claim where plaintiff had ceased to be employed by defendant for more than two years prior to defendant's misconduct).  The two instances defendant argues might be considered retaliatory, a June 2012

discussion with Melinda Brayo about plaintiff's duties, and a 2013 dispute regarding discrepancies in her pay amounts (Docket No. 33, Def. Statement ¶¶ 32, 43-44).  Defendant concludes that no adverse action arose from these instances; hence plaintiff has no retaliation claim (Docket No. 33, Def. Memo. at 9).

In Esmilla, plaintiff was terminated and the issue was the reason for that termination, with plaintiff claiming that she was fired in retaliation for her complaint about allegedly illegal corporate practices, 936 F. Supp. 2d at 235; see also Reilly, supra, 178 F. Supp. 2d at 422 (plaintiff willfully terminated); Seever, supra, 528 F. Supp. 2d at 166 (plaintiff was terminated after complaining of unpaid overtime work); Soto v. MDB Dev. Corp., No. 154319/2012, 2013 N.Y. Misc. LEXIS 3860, at *1 (N.Y. Sup. Ct. Aug. 26, 2013) (plaintiff complained, then was terminated).  "Although the majority of successful retaliation claims under N.Y. Labor Law § 215 are premised on employment termination, this is not the only action that may constitute an 'adverse employment action,'" Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 702, 712 n.6 (S.D.N.Y. 2007) (citing Kreinik v. Showbran Photo, Inc., No. 02 Civ. 1172, 2003 U.S. Dist. LEXIS 18276, at *29-30 (S.D.N.Y. Oct. 10, 2003)).  Section 215 includes claims of employees being penalized or otherwise discriminated against, N.Y. Lab. Law § 215(1)(a), with cases under this act holding that an employer commencing a counterclaim against the employee constituted an adverse employment action under the statute, Kreinik, supra, 2003 U.S. Dist. LEXIS 18276, at *30; see Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447 (S.D.N.Y. 2008), schedule changes, unfavorable assignments, and the employee being sent home are adverse employment actions, Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253 (S.D.N.Y. 2011), while a

two-night assignment in a rotating work schedule was deemed too trivial to be an adverse employment action, Lu, supra, 503 F. Supp. 2d at 713.

Plaintiff has not established that any adverse action occurred from her reporting violations of New York Labor Law to her supervisors.  Plaintiff was not terminated for any of her complaining of Labor Law violations.  She argues that the misclassification is the adverse action (Docket No. 40, Pl. Memo. at 16).  Even accepting this as an adverse action, plaintiff complains of continuing harm rather than imposition of new, harmful conditions upon her complaints.  In the June 2012 incident with Brayo, plaintiff complained that Brayo's predecessor did not redistribute plaintiff's job responsibilities and plaintiff then states she got a negative evaluation by Brayo despite the fact plaintiff believed she was working two different job classifications (Docket No. 40, Pl. Memo. at 20; Docket No. 40, Pl. Ex. 3, Bates Nos. 000072, 000078).  But an analysis of the entire 2012 performance review shows (Docket No. 40, Pl. Ex. 3, Bates Nos. 000072-000078) plaintiff generally scoring "Effective" ratings (on a scale of "Ineffective" to "Highly Effective") for several criteria and written comments were generally favorable.  Nevertheless, plaintiff fails to show the nexus between her overtime and duties complaints with her 2012 evaluation.  The negative aspects of her 2012 review are not adverse employment actions, and, if deemed to be, are not connected with her earlier complaints.

In 2013, plaintiff noted a one cent discrepancy in her pay statements to her supervisors and asserted that there were violations of New York Labor Law and the New York Wage Theft Prevention Act, 2010 N.Y. Laws ch. 564 (Docket No. 33, Def. Statement ¶ 43).  Plaintiff concludes that defendant retaliated after she made this comment.  Defendant concludes this is a fact statement that "[p]laintiff experienced no adverse action as a result of asking the question"

19

(id., citing Pl EBT Tr. 423, 433), plaintiff admitted that statement (Docket No. 40, Pl. Response to Def. Statement ¶ 43).  Therefore, plaintiff now admits that no adverse action arose from this incident.

Unlike the termination cases and the cases of other recognized adverse employment actions, plaintiff here has not shown any adverse action from her complaints to her supervisors about alleged Labor Law violations.  Thus, defendant's motion for summary judgment dismissing plaintiff's Third Cause of Action for retaliation should be **granted**.

IV.    Discriminatory Treatment and Limitations Period

Plaintiff's claims violations of 42 U.S.C. § 1981, for pay discrimination and failure to promote based on race (see Docket No. 1, Compl., Fourth and Fifth Causes of Action). Defendant argues that any claims before April 28, 2010, are time barred (Docket No. 33, Def. Memo. at 9).  Plaintiff responds that she generally established a prima facie case under § 1981 (Docket No. 40, Pl. Memo. at 17-19).  She does not address what the appropriate statute of limitations period should be for her § 1981 claims or that her claims are timely.

Plaintiff does criticize defendant for citing Kerzer v. Kingly Mfg., 156 F.3d 396, 402-03 (2d Cir. 1998) (cf. Docket No. 33, Def. Memo. at 3, 4, 13 n.3), which relied upon evidence from "pre-dated" claims  to support that litigant's discrimination claims (Docket No. 40, Pl. Memo. at 18-19).  But Kerzer involved a claim under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), where plaintiff was terminated prior to a purported date to return to work from maternity leave, id. at 398-400; this case made no reference to the timeliness of that claim or reliance on time barred facts.

Defendant claims that part of plaintiff's pay discrimination claim is based on a comparison with a former employee who retired in 2007 (Docket No. 33, Def. Memo. at 12). Therefore, portions of plaintiff's § 1981 claim that occurred before April 28, 2010, are **time barred** and defendant's motion for summary judgment to dismiss this claim (Docket No. 33) should be **granted**.

V.      Discrimination in Pay or Failure to Promote

        A.      Pay Discrimination

Defendant next argues that plaintiff has not met her initial burden of showing that similarly situated non-African Americans received more pay than she did (Docket No. 33, Def. Memo. at 11).  Plaintiff's race is conceded.  Defendant argues that plaintiff did not establish that there were similarly situated non-African American employees who earned more than plaintiff (Docket No. 33, Def. Memo. at 12).  Defendant refutes that the Caucasian employees cited by plaintiff were comparative to her, with one employee having worked 23 more years than plaintiff, a second working for Ford of Canada in a foreign country and under a different pay schedule, and a third employee earning less than plaintiff (id.; Docket No. 33, Def. Statement ¶¶ 17, 46), while another employee (Brandon Knight) was a supplemental employee and not considered a regular Ford employee (Docket No. 33, Def. Statement ¶ 46).  In her response, plaintiff admits that she did not know the particulars of the other employees' salaries or pay grades (Docket No. 40, Pl. Response to Def. Statement ¶ 40).

As for the portions of her pay discrimination claim that is not time barred, plaintiff fails to present evidence of the pay and grade of the comparable non-African American employees

21

she contends were paid more than her.  Without this proof, defendant's motion for summary

judgment dismissing this claim (Docket No. 33) should be **granted**.

      B.      Failure to Promote

      As for this claim, defendant argues that plaintiff did not meet the minimum qualifications

for the HR promotions she sought since she needed an assessment of her human resource skills at

defendant's world headquarters (Docket No. 33, Def. Memo. at 11-12, 13-14; Docket No. 33,

Def. Statement ¶¶ 22-23, 28, 33, 35-39).  Plaintiff applied for human resources labor supervisor

in the Louisville Assembly plant; HR associate, salaried personnel; manager, defined

contribution plans; and labor relations supervisor, as well as two non-human resources jobs, with

defendant contending that plaintiff was not qualified for any of these positions (Docket No. 33,

Def. Statement ¶ 35).  Defendant also argues that plaintiff fails to discuss the qualifications for

many of these positions and the race of the successful candidates (Docket No. 33, Def. Memo. at

14).

      Plaintiff, however, contends that she was qualified for the positions she sought (Docket

No. 40, Pl. Memo. at 20-21; Docket No. 40, Pl. Response to Def. Statement ¶ 35).  Plaintiff has a

bachelor's degree in finance and a master's of business administration with fifteen years of

experience with defendant (id. at 21).

      The first promotion sought was in 2009 while plaintiff was under administrative

discipline and barred from being eligible for that promotion (Docket No. 33, Def. Statement

¶ 22).  Also, this first opportunity is time barred (as discussed above) since it occurred before

April 2010.  Plaintiff was assessed in 2011 but supervisors declined to give her a

recommendation for a new position (id. ¶ 28).  In 2012 (id. ¶ 32), plaintiff was told that she

would have to be assessed despite her arguments that she was grandfathered and did not need to be assessed (id. ¶ 33; but cf. Docket No. 40, Pl. Response to Def. Statement ¶ 33 (plaintiff's denial)).

The Louisville plant labor supervisor position required the candidate to have labor relations experience at a leadership level, which plaintiff did not have (Docket No. 33, Def. Statement ¶ 36).  Plaintiff counters that labor relations experience was one of several qualifications for the position (Docket No. 40, Pl. Response to Def. Statement ¶ 36).

The parties dispute whether an assessment was necessary for being hired for a human resources position (compare Docket No. 33, Def. Statement ¶¶ 23, 33, 37, 38, 39 with Docket No. 40, Pl. Response to Def. Statement ¶ 23, 33, 37, 38, 39; Docket No. 40, Ex. 2, Long EBT Tr. at 59 (supervisor Long testifying that an assessment was not required for hiring human resource associates).  Whether this is a job qualification for promotion or not is a material issue of fact, precluding summary judgment regarding plaintiff's eligibility.  Despite plaintiff's contention that plaintiff was not qualified for these promotions, defendant's motion (Docket No. 33) on this cause of action should be **denied**.

VI.    What Remains

Assuming acceptance of the recommendations made herein in this Report following any Objections, the following causes of action will survive defendant's present summary judgment motion:  plaintiff's First and Second Causes of Action for overtime pay and so much of plaintiff's Fifth Cause of Action (alleging facts after April 28, 2010) for failure to promote given the issues of fact recognized in this Report.

## CONCLUSION

Based upon the above, it is recommended that defendant's motion for summary judgment (Docket No. 33) be **granted in part, denied in part**, as outline above.  Specifically, portions of plaintiff's § 1981 claims (Fourth and Fifth Causes of Action) arising before April 28, 2010, are time barred and defendant's motion should be **granted**; defendant's motion for summary judgment dismissing plaintiff's Fair Labor Standards Act and New York Labor Law overtime wage claims (First and Second Causes of Action) should be **denied**.  Plaintiff's retaliation claim (Third Cause of Action) should be **granted**.  So much of plaintiff's surviving § 1981 claims for pay discrimination (Fourth Cause of Action) should be **granted**, while her claims for failure to promote (Fifth Cause of Action) after April 28, 2010, should be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v.

Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       January 19, 2016