**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

KELLEY M. PATTON,

               Plaintiff,

               v.

FORD MOTOR COMPANY,

               Defendant.

_____

14-CV-0308-RJA-HBS
**DECISION AND ORDER**

      This case is before the Court on the Defendant's objections to Magistrate Judge Scott's Report and Recommendation, which recommends granting in part and denying in part the Defendant's motion for summary judgment. For the reasons stated below, the Court sustains the Defendant's objections and adopts the Report and Recommendation in part. The Defendant's motion for summary judgment is therefore granted in its entirety.

## BACKGROUND

      The Court assumes familiarity with this case's factual and procedural background. The Court therefore recites only the undisputed facts that are relevant to the claims at issue in the Defendant's objections.

      The Plaintiff is an African-American woman who has been employed at Defendant Ford Motor Company's Buffalo Stamping Plant (BSP) since 1999. The primary dispute in this case concerns the way in which the Defendant classified the Plaintiff's job at the BSP. In 2005 or 2006, the Plaintiff accepted a position as a human resources associate. One of the Plaintiff's duties in that position was "manpower planning." Both parties agree that manpower planning "consist[s] of office or non-

manual work." Docket No. 41-1 ¶ 13. And both parties agree that manpower planning involves "assign[ing] and plac[ing] all hourly employees on all shifts, including those employees who work on the press and sub-assembly lines to produce sheet metal vehicle parts for shipment to Ford assembly plants." *Id.* Specifically—and as the Plaintiff did not dispute—manpower planning requires "gathering and analyzing input on an ongoing basis from production supervisors and area managers in order to ascertain and resolve the often conflicting and quickly evolving needs of different departments and shifts, and assigning sufficient manpower to each department for each shift based on the provisions of both the national and [local] collective bargaining agreements and the rights to stated shift preferences of the individual employees." *Id.* ¶ 14. *See also* Fed. R. Civ. P. 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.") The parties also agree that manpower planning required the Plaintiff to "efficiently assign and place all hourly employees on all shifts, including those employees who work on the press and sub-assembly lines to produce sheet metal vehicle parts for shipment to Ford assembly plants." Docket No. 41-1 ¶ 13.

In other words, as the Plaintiff described her job in a then-recent resume—which, she testified, was accurate, Docket No. 41-2 at 18 (Dep. Tr. 483:6-8)—the Plaintiff's job was to:

> Administer all aspects of the HR Generalist position, including but not limited to: conduct personnel relations investigations, propose penalties which result from disciplinary actions, pool resources to maintain HR information systems, prepare plant-wide HR communications, interpret UAW national and local contracts, track metrics for individual/department/plant scorecards, facilitate climate surveys and

benefit enrollment programs, as well as, managed various day-to-day employee issues. Docket No. 41-2 at 25.

The Plaintiff also had duties at the BSP other than manpower planning. First, the Plaintiff was responsible for investigating grievances and reporting human resource problems to her supervisors. Second, and more relevant to this case, in 2008 the BSP underwent a "workforce reduction, which included the elimination of the lower-level hourly personnel job being performed" by another employee. *Id.* ¶ 20. At least some of that employee's duties were assigned to the Plaintiff. For instance, the Plaintiff testified that she performed data entry and data manipulation and that she "r[an] reports." Docket No. 33-6 at 10 (Dep. Tr.130:9-13). The Plaintiff suggested in her deposition that she spends between four and ten hours a week on these other job functions. *See* Docket No. 41-2 at 10-11 (Dep. Tr. 144:19 – 147:5).

In addition to claims arising from her job classification, the Plaintiff also alleges that the Defendant failed to promote her because of her race. Specifically, the Plaintiff identifies five positions within Ford (some at the BSP, and some at other Ford locations) for which she applied but was not hired. Notably, however, and as discussed below, the Plaintiff does not identify the race of any of the individuals who ultimately received the positions for which she applied.

## DISCUSSION

### A. Recommendations to which no objections have been made

Judge Scott recommends granting the Defendant's motion for summary judgment as to the Plaintiff's third claim, which alleges retaliation, in violation of New York Labor Law § 215; the Plaintiff's fourth claim, which alleges discrimination on the basis of race, in violation of 42 U.S.C. § 1981; and the time-barred portion of the

Plaintiff's fifth claim, which alleges discrimination based on a failure to promote, also in violation of 42 U.S.C. § 1981.

The Plaintiff does not object to any of these recommendations. "Where no objection is made to a report and recommendation . . . only 'clear error' review is required by the district court." *Teixeria v. St. Jude Medical S.C., Inc.*, 193 F. Supp. 3d 218, 222 (W.D.N.Y. 2016) (citing Fed. R. Civ. P. 72(b)). "In such case, the district court 'need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting 1983 Advisory Committee Note to Fed. R. Civ. P. 72(b)). The Court has carefully reviewed Judge Scott's Report and Recommendation and the record in this case. Upon such review, the Court finds no clear error in Judge Scott's recommendation to grant summary judgment as to the Plaintiff's third and fourth claims, and partial summary judgment as to her fifth claim. Summary judgment is granted accordingly.

**B. Recommendations to which objections have been made**

Judge Scott recommends denying the Defendant's motion for summary judgment as to the Plaintiff's first and second claims, which allege, respectively, failure to pay overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 and New York Labor Law. Judge Scott also recommends denying the Defendant's motion for summary judgment as to the non-time-barred portion of the Plaintiff's fifth claim, which alleges discrimination based on a failure to promote, in violation of 42 U.S.C. § 1981.

The Defendant objects to each of these recommendations. The Court therefore reviews each recommendation *de novo*. 28 U.S.C. § 636(b)(1). Thus, the Court must

"give fresh consideration to those issues to which" the Defendant objects, and it must "examine the entire record . . . mak[ing] an independent assessment of the magistrate judge's factual and legal conclusions." *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quotation marks omitted).

### 1. Failure to pay overtime wages

The Plaintiff's first claim alleges a failure to pay overtime wages, in violation of the FLSA, and her second claim alleges a failure to pay overtime wages in violation of New York Labor Law. Both statutes "mandate overtime pay and appl[y] the same exemptions." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010). *See* 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.2 ("An employer shall pay an employee for overtime . . . subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq.*, the Fair Labor Standards Act of 1938.") The Court therefore analyzes both claims together.

The FLSA requires an employer to pay its employees "not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). "This general rule does not apply, however, to several types of employees, including 'administrative' employees." *Reiseck*, 591 F.3d at 104 (citing 29 U.S.C. § 213(a)(1)). The FLSA does not define the term "administrative," but the Secretary of Labor has promulgated regulations that interpret the term in detail. According to the Secretary's regulations, to be considered an "administrative" employee within the meaning of the FLSA, an employee must:

(1) be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week";

(2) have as his or her "primary duty . . . the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers";[1] and

(3) have as his or her "primary duty" work that "includes the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200(a).[2]

There is no dispute that the Plaintiff's job satisfies the administrative exemption's first element: at the time the Plaintiff began working at the BSP, her annual salary was $44,100 ($848 per week), and at the time she filed her complaint in this case, her annual salary had increased to $87,422 (approximately $1,680 per week).  Docket No. 40-1 ¶¶ 4, 45.

The Defendant objects, however, to Judge Scott's conclusion that summary judgment is not warranted as to the second and third elements of the FLSA's administrative exemption.  Specifically, the Defendant argues that there is no genuine dispute of material fact as to 1) whether manpower planning is the Plaintiff's "primary duty," and 2) whether manpower planning requires the "exercise of discretion and independent judgment."

Whether the Plaintiff's job satisfies the regulatory definition of the term "administrative" "is a mixed question of law and fact."  *Ramos v. Baldor Specialty Foods,*

---

[1]   Neither party disputes that the Plaintiff's "manpower planning" function "consist[s] of office or non-manual work."  Docket No. 41-1 ¶ 13.

[2]   The Secretary partially amended this regulation in May 2016.  *See Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 81 Fed. Reg. 32,391 (May 23, 2016).  In November 2016, however, the United States District Court for the Eastern District of Texas issued a nation-wide injunction enjoining the Secretary from implementing or enforcing the amended regulations.  *See Nevada v. U.S. Dep't of Labor*, --- F. Supp. 3d ---, 2016 WL 6879615 (E.D. Tex. Nov. 22, 2016), *appeal docketed*, 16-41606 (5th Cir).  Those amendments are not relevant to the parties' dispute in this case.

*Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quotation marks omitted). "The question of how [an employee] spent [her] working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law which . . . is governed by the pertinent regulations promulgated by the Wage and Hour Administrator" within the Department of Labor. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). In interpreting these provisions and considering the parties' arguments, the Court is mindful that the FLSA's exemptions "are to be narrowly construed," and that the employer "bears the burden of proving that its employees fall within an exempted category" of the FLSA. *Ramos*, 687 F.3d at 558 (quotation marks omitted).

### a. Whether there is a genuine dispute of material fact as to whether manpower planning is the Plaintiff's "primary duty"

The Secretary's regulations define the term "primary duty" to mean "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). To determine an employee's "primary duty," the Court must look to "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* Specifically, the Court looks to (among other things), "the relative importance of the exempt duties as compared with other types of duties." *Id.* And to make that assessment, the Court must consider whether the Plaintiff's exempt duties were of "principal importance" from the employer's perspective. *See Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 541 (7th Cir. 1999), *overruled on other grds.*, *Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013) ("[Plaintiff's] duties . . . appear to be ones that would be of 'principal importance to [employer] Ernst & Young. . . . His client contact and efficiency changes would be of great important to Ernst &

Young."); *Hein v. PNC Fin. Svcs. Grp.*, 511 F. Supp. 2d 563, 572 (E.D. Pa. 2007) (making a similar point). The Court also considers "the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Finally, the regulations note that "[t]he amount of time spent performing work can be a useful guide in determining whether exempt work is the primary duty of an employee." *Id.* § 541.700(b). But the regulations also note that "[t]ime alone . . . is not the sole test," and "nothing . . . requires that exempt employees spend more than 50 percent of their time performing exempt work." *Id. See also Piscione*, 171 F.3d at 538 ("Just because an employee may spend a significant portion of his time engaged in ministerial or routine tasks does not necessarily prevent the application of the administrative exemption.")

The Court finds no genuine dispute of material fact as to whether manpower planning is the Plaintiff's "primary duty" within the meaning of the regulations interpreting the FLSA's administrative exemption. As an initial matter, the Plaintiff admitted as much: in her deposition, the Plaintiff described manpower planning as "one of the major parts of my job." Docket No. 33-6 (Dep. Tr. 67:18). And to support the Plaintiff's admission, the Defendant has introduced a number of affidavits from the Plaintiff's supervisors, each of which asserts that manpower planning is, as one supervisor put it, "critical to the core business of BSP" because without it, "the efficient production of the parts necessary to fill the Plant's customer requirements on time" would be "shut down or slowed." Docket No. 33-4 ¶ 4. *See also* Docket No. 33-5 ¶ 4

(affidavit from the Plaintiff's former supervisor noting that manpower planning is a "core duty . . . that is central to the business's operation, i.e., the efficient personnel placement of production employees who produce sheet metal automobile parts for shipment to Ford assembly plants"); Docket No. 33-8 ¶ 4 (affidavit from former human resources manager for BSP describing manpower planning as "the main function" of the Plaintiff's job); Docket No. 33-9 ¶ 3 (affidavit from another former BSP human resources manager describing manpower planning as the Plaintiff's "main responsibility").  These statements plainly show that manpower planning is, from the Defendant's perspective, the "most important duty the [Plaintiff] performs."  29 C.F.R.   § 541.700(a).  Moreover, these facts unquestionably show that manpower planning is "directly related to the management or general business operations" of the BSP, 29 C.F.R. § 541.201(a), because it has a direct impact on whether the BSP has sufficient labor to efficiently produce what it must produce at any particular point in time.  *See id.* § 541.201(b) (listing "personnel management; human resources; employee benefits; labor relations" as "[w]ork directly related to management or general business operations").

The Plaintiff offers no evidence that puts the Defendant's numerous factual assertions into genuine dispute.  *See* Fed. R. Civ. P. 56(c)(1)(A).  In her Local Civil Rule 56 response to the Defendant's Statement of Undisputed Facts, the Plaintiff denies that manpower planning is her "primary duty," and she cites several pages of her deposition transcript in support of her denial.  Docket No. 40-1 ¶ 11.  The transcript pages cited, however, do not contradict the Defendant's assertions.  Rather, in those transcript pages the Plaintiff testified that a "standardized [Ford] template" describing human resource tasks for a number of human resource positions included a description of job

duties that "are or were performed under the hourly personnel person's job responsibilities." Docket No. 40-2 (Dep. Tr. 102:14 – 103:22). That evidence, in other words, shows only that *some* Ford human resource employees might perform nonexempt tasks as part of his or her job—it does not show that *the Plaintiff* did so. Likewise, the deposition excerpts the Plaintiff cites in response to the Defendant's factual assertions do not support the Plaintiff's denial. To the contrary, the Plaintiff admitted that "one of the things" necessary to the BSP's functioning was manpower planning. Docket No. 33-6 (Dep. Tr. 323:4-14). And the uncontradicted facts put forward by the Defendant show that manpower planning is particularly important when "compared with other types of duties" performed by the Plaintiff. 29 C.F.R. § 541.700(a). There is no serious question (and the Plaintiff offers no evidence suggesting) that, as between data entry and "assigning sufficient manpower to each department for each shift based on the provisions of both the national and [local] collective bargaining agreements" (Docket No. 41-1 ¶ 14), the latter function is of *far* more importance to the operation of a plant whose purpose is to produce sheet metal parts for various Ford vehicles. *Id.* ¶ 13.

The Plaintiff likewise does not refute the Defendant's factual assertions that manpower planning was her "primary duty." *See* Fed. R. Civ. P. 56(c)(1)(B). She instead argues that "none of the declarations to which Defendant cites actually support its assertion," and she attempts to downplay the affidavits as "self-serving" and "conclusory." Docket No. 46 at 5. The affidavits, however, do support the Defendant's assertions.[3] And in any event, "to defeat summary judgment," the nonmoving party

---

[3] "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that

"must come forward with evidence that would be sufficient to support a jury verdict in [her] favor." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). This requires more than just "conjecture or surmise," and "[t]he party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Id.* (quotation marks omitted). Put differently, "unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Unsupported allegations are all the Plaintiff has mustered, however.

Finally, the parties dispute the significance of a suggestion in the Plaintiff's deposition that she spends between four and ten hours a week on potentially non-exempt job functions. *See* Docket No. 41-2 at 10-11 (Dep. Tr. 144:19 – 147:5). Whether or not this is accurate, it does not change the Court's conclusion that there is no genuine dispute of material fact as to whether manpower planning is the Plaintiff's "primary duty." As an initial matter, the Plaintiff offered no evidence suggesting that she in fact spent more than ten hours per week on nonexempt tasks. But even assuming the Plaintiff spent ten hours per week on nonexempt tasks, the Plaintiff's "primary duty" could still, quit reasonably, be manpower planning. Indeed, the Plaintiff's assertion that she spends ten hours per week on nonexempt tasks suggests that her primary duty *is* manpower planning: it suggests (even with all reasonable inferences drawn in her favor) that the Plaintiff spends the remainder of her workweek on exempt functions.

---

the standard for the entry of summary judgment . . . is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rule 56 specifically contemplates the use of affidavits to support a motion for summary judgment, *see* Fed. R. Civ. P. 56(c)(4), and the Plaintiff does not suggest that the Rule's requirements for using an affidavit have not been met.

The Court therefore grants the Defendant's motion for summary judgment on the question whether manpower planning is the Plaintiff's "primary duty" within the meaning of the FLSA's administrative exemption.

**b. Whether there is a genuine dispute of material fact as to whether the Plaintiff's "primary duty" "includes the exercise of discretion and independent judgment with respect to matters of significance"**

To qualify as an exempt "administrative" employee, the Secretary's regulations also require that an employee's "primary duty" "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). "In general, the exercise of discretion and significant judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). As with the question whether certain work is an employee's "primary duty," the question whether the Plaintiff's primary duty requires "the exercise of discretion and independent judgment" is evaluated "in light of all the facts involved in the particular employment situation." *Id.* § 202(b). Factors the Court considers include whether an employee "has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree . . .; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides

12

consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances." *Id.* In short, "[t]he regulations make clear that the authority to 'exercise . . . discretion and independent judgment' means more than simply the need to use skill in applying well-established techniques or procedures prescribed by the employer." *In re Novartis Wage and Hour Lit.*, 611 F.3d 141, 156 (2d Cir. 2010), *abrogated on other grds.*, *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012).

Exercising discretion and independent judgment does not mean, however, that an employee's decisions must be final for the employee's duties to fit within the FLSA's administrative exception. Instead, "[t]he decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.202(b). Thus, "[t]he fact that an employee's decision may be subject to review . . . does not mean that the employee is not exercising discretion and independent judgment." *Id.*

The Court finds no genuine dispute of material fact as to whether manpower planning—the Plaintiff's "primary duty"—includes "the exercise of discretion and independent judgment with respect to matters of significance." *Id.* § 541.200(a)(3). The BSP's prior Labor Relations Supervisor—who performed the Plaintiff's manpower planning duties "for up to a month" when the Plaintiff was out of the office, and who trained another employee in manpower planning—asserted that manpower planning

requires the exercise of discretion and independent judgment because it "requires gathering input from the production supervisors and area managers ascertaining the manpower needs of different department and shifts while resolving conflicting needs between departments and shifts, and assigning sufficient manpower to each department for each shift based on the provisions of the national and local CBA's and the stated shift preferences of the individual employees."  Docket No. 33-5 ¶ 4.  The BSP's current Labor Relations Supervisor, to whom the Plaintiff reported, similarly stated that manpower planning "requires the exercise of discretion and independent judgment as it requires weekly assessment of the BSP manpower requirements to staff the maintenance department, material handling department, quality department, and sub-assembly and press lines on each shift and in each department so as to meet the then-current production demands.  The demands—in terms of numbers, types of parts, and models—vary considerably depending on production needs of those Ford assembly plants for which BSP produces metal stamped and sub-assembled parts.  The staffing requirements must resolve conflicting demands for shift preferences, seniority rights and other employee rights and company responsibilities set forth in the national and local collective bargaining agreements."  Docket No. 33-4 ¶ 4.

Although she did not use the terms "discretion" or "independent judgment," the Plaintiff's description of manpower planning similarly demonstrates that the job involves balancing a number of competing demands.  She testified that the "weekly manpower planning schedule I do changes sometimes daily with the assembly plant that we serve; we are their customer. . . . [The] hours it takes to change and make revisions on that plan are directly tied to the organization at the plant level, and sometimes the

organization at the company level, due to changes in the production schedule, vehicles that are going to be built, so that it directly tied [sic] to my flexing the plan to change and coordinate and align with the production schedule."  Docket No. 33-6 at 7 (Dep. Tr. 99:14 – 100:2).  This evidence is more than sufficient to satisfy the Defendant's burden of showing that manpower planning requires "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).

In response to this evidence, the Plaintiff primarily argues that her job was simply to "appl[y] rules given to her, which is the exact opposite of discretion."  Docket No. 46 at 6 (emphasis omitted).  Specifically, the Plaintiff argues that her manpower-planning authority was cabined by preexisting rules and collective bargaining agreements.  As an initial matter, this fact does not foreclose application of the FLSA's administrative exemption.  *See Roe-Midgett v. CC Svcs, Inc.*, 512 F.3d 865, 875 (7th Cir. 2008) ("[I]ndependent judgment is not foreclosed by the fact that an employee's work is performed in accordance with strict guidelines.")  *Cf.* 29 C.F.R. § 541.704 ("The use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters . . . does not preclude exemption under Section 13(a)(1) of the Act . . . .   Such manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exempt status.").  *See also id.* § 541.202(e) (cross-referencing § 541.704).

But in any event, the Plaintiff offers no evidence supporting her contention that manpower planning is simply a mechanical exercise in schedule-making.   To the

contrary, the Plaintiff acknowledged that her position required her to "interpret" national and local collective bargaining agreements (Docket No. 41-2), and her own description of manpower planning—balancing needs based on "the production schedule, vehicles that are going to be built," Docket No. 33-6 at 7 (Dep. Tr. 99:21-23), with the needs of various CBAs and individual employees—demonstrates that manpower planning requires her to exercise some degree of judgment. Even if the Plaintiff must balance needs that come from supervisors and production plants, and even if the Plaintiff's discretion is limited by CBAs and other rules, the Plaintiff does not dispute that manpower planning "affects business operations to a substantial degree, even if [her] assignments are related to operation of a particular segment of the business"—namely, the BSP. 29 C.F.R. § 541.202(b). Rather, she *admits* that her job is to "efficiently assign and place all hourly employees on all shifts." Docket No. 40-1 ¶ 13. The Plaintiff's admission implies what her supervisors stated: that manpower planning requires her to use judgment to find the proper balance between a number of competing interests.

The evidence on which the Plaintiff relies to deny that manpower planning requires discretion and judgment does not compel a different conclusion. In her Local Civil Rule 56 response to the Defendant's Statement of Undisputed Facts, the Plaintiff relies on several lines of her deposition transcript to deny the Defendant's assertion that manpower planning requires the exercise of discretion and independent judgment. In those lines, the Plaintiff denied that she "decid[ed]" anything when she sorts out seniority dates and shift preferences. Docket No. 40-2 at 10 (Dep. Tr. 128:3-18). But that is not inconsistent with exercising discretion and independent judgment in

manpower planning, particularly given the Plaintiff's admission that she sometimes needed to "flex[] the plan to change and coordinate and align with the production schedule" based on production needs. Docket No. 33-6 at 7. In other words, the fact that part of manpower planning may require a mechanical assessment of factors such as employee seniority does not necessarily mean that the end result of her work is always the same, and it does not mean that *every* part of manpower planning is cut and dry. As the Defendant helpfully frames the issue, "what does [the Plaintiff] do with employees who do not have sufficient seniority to be assigned to any of their preferred shifts or departments? Does she slot them for layoff and risk grievances and back pay awards? Or does she place them in a department or on a shift they do not want and risk grievanecs for that? Or does she place them in a job for which they are not trained and to which they have no bumping rights and again risk possibly more grievances?" Docket No. 45 at 6-7. The Plaintiff calls these "intriguing" questions and attempts to dismiss them because, she argues, "the legally relevant question involves *how* Plaintiff made decisions—not *what* those decisions were." Docket No. 46 at 7. But the regulations implementing the FLSA's administrative exemption do not support the Plaintiff's argument: the regulations state that discretion and independent judgment "involve[] the comparison and evaluation of possible *courses of conduct*." 29 C.F.R. § 541.202(a). And the regulation requires that those choices concern "matters of significance." *Id.* The regulation, in other words, is focused first and foremost on whether an employee's job requires him or her to make choices on significant questions—not on whether the manner in which the employee resolves those choices is limited by guidelines. *Cf. id.* § 541.202(c) ("[E]mployees can exercise discretion and

17

independent judgment even if their decisions or recommendations are reviewed at a higher level.")

In short, the Court finds no genuine dispute of material fact as to whether the Plaintiff's "primary duty"—manpower planning—requires "the exercise of discretion and independent judgment." *Id*. The Court therefore finds no genuine dispute of material fact as to whether the Plaintiff is an exempt "administrative" employee, as that term is defined under the FLSA and its implementing regulations. Accordingly, the Court grants the Defendant's motion for summary judgment as to the first and second causes of action.

### 2. Failure to promote

The Defendant next objects to Judge Scott's conclusion that there is a genuine dispute of material fact precluding summary judgment as to the non-time-barred portion of the Plaintiff's fifth claim. That claim, as noted, alleges that the Defendant failed to promote the Plaintiff because of her race, in violation of 42 U.S.C. § 1981. Specifically, the Plaintiff alleges that she applied, but was passed over, for five positions: one as a Labor Relations Supervisor; one as the Manager of Defined Contribution Plans in Dearborn, Michigan; one as Plant IT Manager; one for Plant Inventory Analyst at the Defendant's Louisville Assembly Plant; and one for a salaried Human Resources associate position.

A failure to promote claim under § 1981 contains "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). This includes the *McDonnell Douglas* burden-shifting analysis that applies to Title VII claims. *See Hill v.*

*Rayboy-Brauestein*, 467 F. Supp. 2d 336, 368 (S.D.N.Y. 2006). "In order to make out a prima facie case of discriminatory failure to promote, in violation of Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "The burden that [a] plaintiff must meet in order to defeat summary judgment at the prima facie stage is 'not onerous, and has been described as 'de minimis.'" *Id.* (quoting *Tex. Dept's of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) and *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

The Defendant moves for summary judgment because, it argues, the Plaintiff "presented no evidence she was rejected under circumstances giving rise to an inference of race discrimination." Docket No. 45 at 17-18. "Specifically," the Defendant claims, "Plaintiff presented no evidence that any position she sought was filled by a non-African-American candidate, nor did she seek discovery on this issue." *Id.* at 18.

In response, the Plaintiff does not point to evidence of the race of the individuals who were ultimately hired for the jobs for which she applied. Instead, she argues, she has met her prima facie burden of showing an inference of race discrimination because the "positions for which Plaintiff applied remained open after Defendant willfully and intentionally passed Plaintiff over for them and subsequently filled them with persons outside of Plaintiff's protected class." Docket No. 46 at 11-12.

But despite claiming otherwise, the Plaintiff identifies no evidence of the race of the individuals whom the Defendant hired for the positions for which the Plaintiff applied.

Summary judgment is therefore appropriate. *See Diagne v. New York Life Ins. Co.*, No. 09 Civ. 5157(GBD)(GWG), 2010 WL 5625829, at *14 (S.D.N.Y. Dec. 8, 2010) (recommending summary judgment on failure to promote claim where plaintiff "does not provide evidence that persons who were not members of the protected class received a promotion that he sought" and where plaintiff did not "indicate the race, religion, or national origin of the person or persons who were ultimately placed in the positions allegedly sought by" plaintiff), *adopted by* 2011 WL 204905 (S.D.N.Y. Jan. 21, 2011), *aff'd*, 472 F. App'x 56 (2d Cir. 2012). *Compare with Shortt v. Congregation KTI*, No. 10 Civ. 2237(ER), 2013 WL 142010, at *9 (S.D.N.Y. Jan. 9, 2013) ("For claims brought under Title VII, in order to raise an inference of discrimination at the *prima facie* stage, it is typically sufficient for a plaintiff to show that the position was filled by someone outside of his protected class.")

In response, the Plaintiff argues that she has made a prima facie showing that she was not promoted under circumstances giving rise to an inference of discrimination because, she argues, discovery showed an "anti-Black animus [at] [the Defendant's] Buffalo Stamping Plant."  Docket No. 46 at 12.  For instance, she states that "discovery revealed that Defendant permitted a UAW representative" to refer to African-American employees by a racial epithet; that a UAW representative "hung handcuffs on the office door of an African-American employee"; that "someone in BSP hung a noose in the Plant, which . . . went unaddressed"; that the words "Obama's Think Tank" were written in a restroom; and that "the word[] 'NIG'" was also written inside a men's restroom.  *Id.* at 13.

"Inference of discrimination is a flexible standard that can be satisfied differently in differing factual scenarios." *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 271 (E.D.N.Y. 2013) (quotation marks and brackets omitted). But while inference of discrimination is a "flexible" standard, it requires more than what the Plaintiff put forward. If true, the incidents and comments described above are, of course, despicable and have absolutely no place in any work place. But at the same time, they are "the kind of isolated and stray remark that is insufficient to . . . defeat summary judgment." *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000). The Plaintiff has come forward with no evidence suggesting that the comments and incidents were made or condoned by anyone with authority over hiring decisions. She has, in other words, not made a prima facie case that the comments and incidents might have had any bearing on her not being promoted. *See Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 938 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.")

The Court therefore finds no genuine dispute of material fact as to whether the Plaintiff has made a prima facie showing that she was not promoted because of her race. Because the Court grants summary judgment on this ground, the Court need not address the Defendant's alternate argument that the Plaintiff "failed to present evidence of the successful candidates' qualifications." Docket No. 45 at 18. The Court therefore grants the Defendant's motion for summary judgment as to the Plaintiff's fifth claim.

**CONCLUSION**

For the reasons stated above, the Court adopts the portions of the Report and Recommendation to which neither party objects. The Court sustains the Defendant's objections and declines to adopt those portions of the Report and Recommendation to which the Defendant objected. The Court therefore grants the Defendant's motion for summary judgment in its entirety. The Clerk of the Court shall take all steps necessary to close this case.

**SO ORDERED.**


Dated: May 18, 2017                                   _s/Richard J. Arcara_____
     Buffalo, New York                          HONORABLE RICHARD J. ARCARA
                                   UNITED STATES DISTRICT JUDGE